Opinion filed March 22,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-11-00176-CV

                                                    __________

 

                  ABILENE
DIAGNOSTIC CLINIC, PLLC, Appellant

 

                                                             V.

 

            PALEY,
ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & 

        COOPER, CHARTERED
AND PAULA CALIMAFDE, Appellees



 

                                   On
Appeal from the 104th District Court

 

                                                            Taylor
County, Texas

 

                                                    Trial
Court Cause No. 24718-B

 



 

O P I N I O N

 

            In
this interlocutory appeal, Abilene Diagnostic Clinic, PLLC challenges the trial
court’s order sustaining appellees’ special appearance.  We affirm.

            Abilene
Diagnostic is a Texas limited liability company with its principal place of
business in Taylor County, Texas.  Two of Abilene Diagnostic’s physician shareholders
wanted defined benefit plans created in order for them to save more money for
retirement and enjoy significant tax advantages.  James Watson, an agent for
Actuarial Data, Inc., recommended Actuarial Data to Abilene Diagnostic as the
company best suited to design the benefit plans for its clinic.  Watson is a
Texas resident, and Actuarial Data is a Pennsylvania corporation with its
principal place of business in Pittsburgh, Pennsylvania.  Actuarial Data chose
Paula Calimafde from the law firm of Paley, Rothman, Goldstein, Rosenberg, Eig
& Cooper, Chartered as the attorney to design and prepare the defined
benefit plans.  Calimafde is a Maryland resident and is licensed to practice
law in Maryland and the District of Columbia.  Paley Rothman is a Maryland corporation
with its only office in Maryland.  Appellees prepared the benefit plans as
requested by Actuarial Data.  Actuarial Data reviewed and approved the plans
prior to submitting the plans to Abilene Diagnostic for execution.

            Abilene
Diagnostic sued appellees, as well as Actuarial Data, Inc.; Actuarial Business
Solutions, LLC; Charles W. Day III; and James Watson for negligence,
malpractice, and negligent misrepresentation based on alleged drafting errors
in the defined benefit plans.   Appellees filed a special appearance asserting
that Texas courts lacked personal jurisdiction.   The trial court sustained
appellees’ special appearance.  Abilene Diagnostic appeals and asserts in a
single issue that the trial court has specific personal jurisdiction over
appellees.  Actuarial Data, Actuarial Business Solutions, Day, and Watson did
not challenge the trial court’s personal jurisdiction and are not parties to
this appeal.

Whether a trial court has personal jurisdiction over a defendant is a matter
of law and is reviewed de novo.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).  “When [as here] a trial court does not
issue findings of fact and conclusions of law with its special appearance
ruling, all facts necessary to support the judgment and supported by the
evidence are implied.”  Id. at 795.

            A
Texas court may exercise personal jurisdiction over a nonresident defendant
only if the requirements of both the Due Process Clause of the Fourteenth
Amendment to the United States Constitution and the Texas long-arm statute are
satisfied.  CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996).  The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident defendant within the provisions of the Texas long-arm
statute.  Tex. Civ. Prac. & Rem. Code
Ann. §§ 17.041–.045 (West 2008); Moki Mac River Expeditions v.
Drugg, 221 S.W.3d 569, 574 (Tex. 2007); BMC Software, 83 S.W.3d at
793.  Once the plaintiff satisfies this burden, the burden shifts to the
nonresident defendant to negate all bases for personal jurisdiction alleged by
the plaintiff.  Kelly v. Gen. Interior Constr., Inc., 301 S.W.3d 653,
658 (Tex. 2010).  

The Texas long-arm statute gives
Texas courts the power to exercise personal jurisdiction over a nonresident
defendant who does business in Texas.  Section 17.042.  The statute provides a list of activities that constitute
doing business in Texas; however, the list is not exhaustive.  PHC-Minden,
L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 166 (Tex. 2007).  The broad language of the statute extends personal
jurisdiction “as far as the federal constitutional requirements of due process
will allow.”  Guardian Royal Exch. Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).  Personal
jurisdiction over nonresident defendants is constitutional when two conditions
are met: (1) the defendant has established minimum contacts with the forum
state and (2) the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice.  BMC Software, 83 S.W.3d at
795 (citing Int’l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

         The minimum-contacts
analysis requires that a defendant “purposefully avail[]” itself of the
privilege of conducting activities within Texas, thus invoking the benefits and
protections of our laws.  Id. (citing Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475 (1985)).  The
“touchstone” of due process analysis is “purposeful availment.”  Michiana
Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005).  There are three parts to a “purposeful availment”
inquiry: (1) only the defendant’s contacts with the forum are relevant;
(2) the contacts relied upon must be purposeful rather than random, fortuitous,
or attenuated; and (3) the defendant must have sought some benefit, advantage,
or profit by availing itself of jurisdiction.  Moki Mac, 221
S.W.3d at 575; Michiana, 168 S.W.3d at 785.

         The defendant’s
activities, whether they consist of direct acts within Texas or conduct outside
Texas, must justify a conclusion that the defendant could reasonably anticipate
being haled into a Texas court.  Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 806 (Tex. 2002) (citing World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Jurisdiction
is premised on notions of implied consent that, by invoking the benefits and
protections of a forum’s laws, a nonresident consents to suit there.  Michiana,
168 S.W.3d at 785.  The quality and nature of the
defendant’s contacts with the forum state, rather than their number, are
important in analyzing minimum contacts.  Am. Type Culture Collection,
83 S.W.3d at 806; Guardian Royal, 815 S.W.2d at 230 n.11.

         A defendant’s contacts
with a forum state can give rise to either general or specific jurisdiction.  BMC
Software, 83 S.W.3d at 795–96; Guardian Royal, 815 S.W.2d at 227–28. 
Abilene Diagnostic has only asserted that the trial court has specific jurisdiction
over appellees.  Therefore, general jurisdiction is not an issue in this
appeal.  

Specific jurisdiction is
established if the defendant’s alleged liability arises out of or is related to
an activity conducted within the forum state.  Moki Mac, 221
S.W.3d at 575–76 (citing Helicopteros Nacionales de Colombia v. Hall,
466 U.S. 408, 414 (1984)).  When specific
jurisdiction is asserted, the minimum-contacts analysis focuses on the
relationship among the defendant, the forum, and the litigation.  Guardian
Royal, 815 S.W.2d at 228.  The focus is not on where the injury was felt,
but on the defendant’s conduct and connections with the forum state in relation
to the alleged liability.  Michiana, 168 S.W.3d at 788–90.

            Abilene Diagnostic alleged in its first
amended petition that the trial court had personal jurisdiction over the
parties based on the fact that the parties all did business with Abilene
Diagnostic and “purposefully availed themselves of the benefits of Texas law by
doing business with a Texas entity.”  As to Paley Rothman and Calimafde
specifically, Abilene Diagnostic alleged that they drafted three defined
benefit plans for Abilene Diagnostic and its employees; obtained a power of
attorney from Abilene Diagnostic; prepared and filed forms on behalf of Abilene
Diagnostic and the benefit plans; drafted amendments to the plans; prepared
resolutions to implement the plans and the amendments; secured IRS
determination letters on Abilene Diagnostic’s behalf; communicated with the IRS
regarding the plans; communicated with Dr. Crumbliss of Abilene Diagnostic
regarding the details and problems of the benefit plans; worked with Abilene
Diagnostic’s ERISA lawyer to correct the problems; and received payment from
Abilene Diagnostic in connection with these services.

            In
support of appellees’ special appearance, appellees filed an affidavit of
Robert Maclay, a stockholder of Paley Rothman, and an affidavit of Calimafde.  Calimafde
stated in her affidavit that she is a resident of Maryland and has never been a
resident of Texas.  She is a stockholder in and practices law at Paley
Rothman.  Calimafde is licensed to practice law in Maryland and in the District
of Columbia.  She has never been licensed to practice in Texas, has never
practiced in Texas, and has not appeared pro hac vice in any Texas court. 
Calimafde prepared the defined benefit plans at the request of her and Paley
Rothman’s client, Actuarial Data.  She performed all work in connection with
the defined benefit plans in Maryland or Connecticut.  All of her
communications in furtherance of her work on the benefit plans were conducted
from her office in Maryland and did not occur until after the benefit plans and
amendments were prepared and adopted.  She executed a Form 2848 Power of
Attorney and Declaration of Representative Form from her Maryland office for
the limited purpose of allowing her to speak to the IRS concerning the benefit
plans.  Calimafde also sent correspondence from her Maryland office to the IRS
office in Covington, Kentucky, in order to secure a favorable determination
from the IRS.  Paley Rothman received and accepted payment from Abilene
Diagnostic, but only sent one invoice in the amount of thirty-five dollars to
Abilene Diagnostic directly.  All other invoices were sent to Actuarial Data,
which in turn sent them to Abilene Diagnostic.

            In
addition, the affiants stated that Paley Rothman is a law firm established in
Maryland with its principal place of business, and only office, located in
Maryland.  No lawyer associated with Paley Rothman is currently or has in the
past ten years been licensed to practice law in Texas, practiced law in Texas,
or appeared pro hac vice in any Texas court.  Neither Paley Rothman nor Calimafde
maintains a registered agent for service of process in Texas.  They have never
incurred or paid any taxes in Texas.  Furthermore, appellees have not engaged
in business in Texas, nor have they committed any tort in Texas.  Appellees do
not have any employees, agents, books, records, telephone listings, or mailing
addresses within Texas.  They have never sold, consigned, or leased any
tangible or intangible property in Texas.  Appellees have never advertised for,
recruited, or solicited customers, clients, or employees in Texas.  And no engagement
letter between Paley Rothman and Abilene Diagnostic exists.

             Abilene
Diagnostic argues that, because appellees specifically created three customized
benefit plans for a Texas entity and its Texas employees for implementation in
Texas, appellees purposefully availed themselves of the benefits and
protections of Texas law.  However, appellees contend that this conduct fits
squarely within the “direct-a-tort” jurisdictional theory that the Texas
Supreme Court rejected in Michiana.  See Michiana, 168
S.W.3d at 788–92.  We agree.  To determine whether a trial court has specific jurisdiction,
the focus is not “on where a defendant directed a tort or where the effects of
tortious conduct will be felt,” but on whether there is a substantial
connection between the defendant’s purposeful contacts with the forum state and
the operative facts of the litigation.  Markette v. X-Ray X-Press Corp.,
240 S.W.3d 464, 469 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing Michiana,
168 S.W.3d at 790–92; Moki Mac, 221 S.W.3d at 585).

            Abilene
Diagnostic directs us to Retamco Operating, Inc. v. Republic Drilling Co.,
278 S.W.3d 333 (Tex. 2009), and Masada Investment Corp. v. Allen, 697
S.W.2d 332 (Tenn. 1985), in support of its argument that appellees went beyond
“directing-a-tort” to Texas when they created the specific benefit plans for
use in Texas by a Texas clinic.  In Retamco, the defendant accepted an
assignment of real property interests in Texas.  278 S.W.3d at 336.  Although
the defendant did not enter Texas in order to purchase the property, the court found
that the defendant reached out and created a continuing relationship in Texas
by taking assignment of Texas real property and, thus, purposefully availed
itself of the benefits and laws of Texas.  Id. at 339–40.  In Masada,
a Texas attorney prepared a warranty deed for real property in Tennessee and
sent the deed to Tennessee to be executed.  697 S.W.2d at 333.  The Tennessee
Supreme Court held that the nonresident attorney purposefully directed his
activities toward the citizens of Tennessee and that his negligent actions
resulted in injury there.  Id. at 335.  Thus, because the attorney knew
his legal work would control the sale of Tennessee realty and be subject to
Tennessee law, he purposefully availed himself of the benefits and laws of
Tennessee.  Id.  Both Retamco and Masada involved real
property interests located in the forum state and subject to the law of the
forum state.  Retamco, 278 S.W.3d at 339–40; Masada, 697 S.W.2d
at 335.  The underlying litigation here does not involve real property, and the
defined plans are subject to federal ERISA law, not Texas law.  See 29
U.S.C. § 1144.  We find these cases distinguishable from the facts before us; therefore,
neither controls our decision here.

            Furthermore,
Texas courts have held that, where the underlying case involves a legal
malpractice action, the focus for personal jurisdiction purposes should be on
where the attorneys performed the legal work at issue.  See Ahrens & DeAngeli,
P.L.L.C. v. Flinn, 318 S.W.3d 474, 484–85 (Tex. App.—Dallas 2010, pet.
denied) (holding trial court did not have specific personal jurisdiction over
Washington law firm where the legal work at issue was performed in Washington
or Idaho and relevant communications were made from there to Texas); Proskauer
Rose LLP v. Pelican Trading, Inc., No. 14-08-00283-CV, 2009 WL 242993, at
*4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.) (holding
trial court did not have specific personal jurisdiction over New York law firm
where attorney created opinion letter in New York and sent it to Texas); Markette,
240 S.W.3d at 468–69 (holding trial court did not have specific personal
jurisdiction over Indiana lawyer where lawyer exercised his legal judgment and
formed his legal opinion in Indiana and relevant communications were made from
there to Texas).

            Here,
appellees created the defined benefit plans in Maryland or Connecticut and sent
the plans to Texas as requested by their client, Actuarial Data.  The plans
were not created or sent to Texas as a result of any contact appellees had with
Texas but, instead, were directed to Abilene Diagnostic in Texas at Actuarial
Data’s request.  In addition, the operative facts of the underlying litigation,
as to the allegations against appellees, will focus primarily on Calimafde’s
creation of the defined benefit plans, not the transmission of those plans to
Texas.  Thus, appellees’ alleged liability does not
arise out of nor is it related to any activity appellees conducted within Texas. 
Therefore, appellees did not purposefully avail themselves of the
benefits and protections of the law in Texas.          

            We hold that appellees negated the
bases for personal jurisdiction alleged by Abilene Diagnostic.  Because we
determine that appellees do not have sufficient minimum contacts to establish
jurisdiction in Texas, we do not reach whether the exercise
of jurisdiction comports with traditional notions of fair play and substantial
justice.  We overrule Abilene Diagnostic’s sole issue.

The order of the trial court sustaining the special
appearance is affirmed.

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

March 22, 2012

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.